No. 18,372.

THE SCOTT CITY NORTHERN RAILROAD COMPANY,
*Appellant,* v. J. ED BILBY et al., *Appellees.*

SYLLABUS BY THE COURT.

PROMISSORY NOTE—*In Aid of Railroad—Never Delivered—Finding of Jury Conclusive.*  This action is upon an instrument containing a promise to pay $20,000 upon the completion of a railroad by a certain time over a specified route.  Many issues are raised by the pleadings and discussed in the argument, among others the question whether the instrument had ever been delivered as a subsisting obligation.  Upon conflicting evidence this issue was determined by the findings of the jury in favor of the defendants.  No error appears in the instructions upon this issue, and the finding of the jury that the instrument was never delivered determines the controversy.  A judgment for the defendants is therefore affirmed.

Appeal from Ellis district court; JACOB C. RUPPENTHAL, judge.  Opinion filed January 10, 1914.  Affirmed.

*C. L. Kagey,* and *R. M. Anderson,* both of Beloit; for the appellant.

*L. C. Cook,* of Marysville, Mo., *R. D. Armstrong,* of Scott City, *Lee Monroe,* of Topeka, and *W. S. Roark,* of Junction City, for the appellees.

The opinion of the court was delivered by

BENSON, J.:  The plaintiff sued the defendants as copartners upon an instrument as follows:

"SCOTT CITY, KANSAS, August 12, 1910.
"Upon the completion of a Standard Gauge Railroad between Scott City, Kansas, and a point on the Union

13—91 KAN.

Pacific Railroad in north Logan County, Kansas, on or before December 31, 1911, for value received, I promise to pay to the order of The Garden City, Gulf & Northern Railroad Company, or any other Company building said railroad, at The First National Bank, Scott City, Kansas, $20,000 (Twenty Thousand and no/100 Dollars) with interest at eight per cent per annum after maturity. This obligation to be conditioned upon the construction and completion by the aforesaid Company or any other company of a standard gauge railroad from Scott City, Kansas, to a point on the Union Pacific Railroad in north Logan County, Kansas, on or before December 31, 1911. Failure to construct said railroad, as above specified, and on what is known as the Beaver Creek route, shall make this obligation null and void.

(Signed)          BILBY & DRAIN,
By J. H. DRAIN."

The defendant Bilby denied the alleged partnership, denied the authority of his codefendant to execute the instrument, and alleged that it had never been delivered. Other defenses were that the railroad was not completed at the time stipulated, nor upon the route referred to, and that his codefendant was induced to sign it by fraud and misrepresentation. The defendant Drain, admitting that he signed the instrument, averred that he was induced to do so through fraudulent representations and practices of promoters of the proposed railroad; alleged that it had never been delivered, and that the conditions respecting the time of completion and the route of the road had not been complied with.

In the spring of 1910 E. A. Tennis and B. M. McCue, who had just recently been engaged with others in constructing a railroad from Garden City to Scott City, planned to build a connecting railroad from Scott City northwardly to Winona on the Union Pacific railway, and to this end they with others organized the plaintiff corporation. Before it was organized, however, the defendant Drain sought to influence the promoters

to adopt a route through the Bilby ranch, then under his management, containing 15,000 acres, and proposed a donation to induce them to do so. Subscription notes, so called, made by landowners along another route called the Pence route had been executed. After the organization of the company, a route was surveyed along the general course of Beaver creek and touching a point at the mouth of Butte and Chalk creek on the Bilby ranch, deemed advantageous by the defendants as a station and town site. Another point eight miles north of the one just mentioned, on the same ranch, was selected for another station. This route was indicated by stakes set by the surveyors before the instrument sued upon was written. After determining to adopt this route the company surrendered subscription notes amounting to about $20,000 taken from landowners along the Pence route, and its soliciting agents, with the assistance of the defendant Drain, employed by the plaintiff for that purpose, entered actively upon the canvass to secure subscription notes from landowners along the Beaver creek route. To facilitate this work it was agreed between the representatives of the company and Drain that he should sign the instrument in question, hereinafter called a note, for $20,000, the amount of aid which he had proposed upon the adoption of that route. This note was to be deposited in a bank at Scott City, where it could be seen by other landowners as an inducement to them to give similar obligations, and that it should afterwards be exchanged for a like note to be signed by both Drain and Bilby personally, but that the first note should not be used otherwise than as stated. The route was changed in part from the one so designated so that it passed a mile or more distant from the mouth of Butte and Chalk creek, although still passing through the Bilby ranch. The road was completed July 2, 1911. The company, through its agents, asked that another note of the same tenor, signed individually by the defend-

ants, should be given and substituted for the one now in suit, then still remaining in the bank at Scott City. A new note was accordingly drawn ready for signing and given to Drain to be sent to Bilby, who resided in Missouri, for his signature. He signed the new note and returned it to Drain, but, as he testified, with a change in its terms, interlining between the words "Logan county" and "Kansas" the words "and Liberal in south," so that the clause read, "To a point on the Union Pacific Railroad in north Logan county *and Liberal in south* Kansas." This testimony was corroborated by witnesses who testified that they saw the note afterwards with the interlineation as stated, and by experts in handwriting who testified that the signature and interlineation were made at the same time. Bilby explained that he made this alteration because it had been the understanding upon which aid should be given that the railroad already built with which this one was to be connected should extend to Liberal, there to connect with the Rock Island railway, so that the new road would be a connecting link in a line extending from the Union Pacific, giving direct railroad facilities from his ranch, where cattle were raised extensively, to the cattle ranges of Texas and New Mexico. Witnesses for the plaintiff who saw the note after Drain had received it from Bilby testified that no such alteration appeared in it. There is also evidence tending to show that both Drain and Bilby based their objections to the delivery of the new note upon the ground that Drain was entitled to a credit upon it for services and made no mention of any change in its terms. The defendants' evidence tended to prove that the note was never delivered as an effective obligation. On the other hand, evidence on the part of the railroad company tended to prove that the note was intended as a valid obligation upon completion of the road and was deposited in the bank for the purpose of substitution because a trust company, to which securities of this

nature were transferred, desired the personal signature of Mr. Bilby.  Mr. Drain testified:

"I told Mr. Christy [the cashier] that Mr. McCue and Mr. Tennis and I had agreed that I would sign a note, J. Ed Bilby and J. H. Drain, by J. H. Drain, and place it in the bank at Scott City as a booster, or to be showed out; that he wanted that this note was to be held by Mr. Christy, and was n't to be put up as collateral, and was to remain in the bank at Scott City, and I would see Mr. Bilby and get Mr. Bilby to—or use my influence for Mr. Bilby to sign a note for the same amount."

The bank in which the note was left held it until March 18, 1911, when Mr. Tennis, vice president and general manager of the railroad company, took it, without the knowledge or consent of the defendants, out of the bank, giving the following receipt:

"GARDEN CITY, KANSAS, Mar. 18th.

"Received of R. B. Christy note for  .  .  .  dollars in favor of the Scott City Northern Railroad Company, and signed by Bilby per James H. Drain.  This note is one of the number for which we hold a receipt of the First National Bank of Scott City, and we hereby agree to return said note to said bank on or before April 1st, 1911, or in lieu thereof a note for like amount signed personally by Bilby and Drain.

THE SCOTT CITY NORTHERN RAILROAD COMPANY.
By E. A. TENNIS."

Another witness testified to an admission of Mr. Tennis to the same effect.

The cashier of the bank testified:

"I had possession of the note sued on; it was left with me by Mr. Drain in August, 1910.  He said he was leaving the note which would be replaced by another note signed personally by J. Ed Bilby and himself; that this note was to be left at the bank until replaced by the other note and was not to be delivered, as it was to be replaced by the other note.  The other note has not been left with me."

Soon after the withdrawal, at the request of Bilby, the bank demanded the return of the note, but the demand was refused and this action was brought upon it.

The evidence shows that Bilby is the owner of the ranch, and that Drain is the occupant and manager, under an agreement for carrying on a general stock raising and feeding business for mutual profit. They may properly be considered partners in this stock business, and are so designated in the agreement.

The fraudulent representations relied upon as a defense are based mainly upon the alleged statement of the company, or its solicitors of local aid, that the connection south from Garden City would be made as a part of the undertaking upon which aid was promised. To give color to this scheme it was alleged, and the evidence tended to prove, that a bridge was built over the Arkansas river at Garden City and some roadway constructed south of it on the supposed line to Liberal, but abandoned when aid notes had been obtained, which representation was made, and work done, to induce the defendants, and other landowners from whom aid was sought, to believe that an important line was to be built to connect the great railways referred to; whereas the Garden City-Scott City line had before that time been leased to the Atchison, Topeka & Santa Fe Railway Company, a fact concealed from the people whose aid was solicited, and an extension south was not contemplated or intended.

A defense not before referred to is based upon the alleged illegality of the contract appearing from the indorsement on the note whereby the obligors were to give land to individuals who were officers of the road in consideration of the proposed location, and an alleged accompanying agreement that they would locate stations in certain places designated by defendants.

Concerning the change of route it is argued that the change was made and the road built upon the new route through the Bilby ranch with the full knowledge

of the defendants, who made no objection, and thereby waived any defense based upon such change.

The jury made special findings as follows: That the railroad was located partly along the Beaver Creek route; that Drain signed the note in suit for himself and Bilby and advised Bilby that he had signed it in the name of Bilby and Drain; that Bilby had no knowledge that Drain had signed it for him although he obtained the knowledge soon after it was done; that Bilby did not notify the plaintiff that he disclaimed liability on the note; that he telegraphed, in answer to an inquiry from a person named, that Drain had full charge of his, Drain's, railroad interests in western Kansas; that he notified the Scott City bank that he claimed nonliability on the note; that he knew that a railroad was being constructed through his lands; that the plaintiff's solicitors before the note was signed represented and induced Drain to believe that the plaintiff was constructing and intended to complete a line of railroad to Liberal from Garden City, and that such representations were made to induce Drain to sign the note, but that he would have signed it even if he had not believed the representations to be true; that the note was deposited by Drain in the Scott City bank for the purpose of having it held there for a time and then returned to him, which purpose was made known to the banker; that its delivery to the railroad company was never authorized by the defendants or either of them; and that the Beaver Creek route, referred to in the note, was understood and intended by Drain to mean the line then marked by stakes.

Instructions were given that:

". . . If you further find that the note was never delivered for both or either defendant as mentioned in the preceding instructions, but that the defendant Drain, after signing the note, placed it in the keeping of the First National Bank at Scott City with direction that it should remain there until replaced by another

note signed by Drain, and that while the note sued on was being· so held, the witness Tennis, without the consent of the defendants or either of them by any means whatever got the note from the bank and into possession of the plaintiff, then if you find these to be facts, they would not constitute in law a delivery of the note sued on.  But if you find that Drain deposited the note in said bank on condition that it was to become the property of plaintiff on completion of the railroad as required by the terms of the note, and if defendants had the right to substitute ·another note of the same amount and terms in its stead signed by both defendants personally, · but did not do so, then such action would be a valid delivery of the note."

These instructions with others to which they refer, although criticized by the plaintiff, fairly submitted to the jury the issue as to the delivery of the note, an issue which, as we have seen, was determined by the jury by its findings upon conflicting evidence in favor of the defendants.

· Issues arising upon the pleadings, aside from the question of the delivery of the note, have been fully argued.  Briefly stated they present the question of the authority of Drain to sign the note for Bilby and Drain; the question of fraud in inducing Drain to sign it; whether the defendants if otherwise bound should be released because of the change of route from the course indicated by stakes, or whether a waiver of that condition should be found from the evidence tending to prove that the defendants remained ·silent although knowing that work was in progress upon the route as changed; and whether the note should be held void because of the proposed · conveyances of land to the promoters and the agreement concerning stations. All these matters would be important if the note had been delivered so as to become a valid obligation, but in view of the finding of the jury, well supported by the evidence, that it had not been so delivered, the action upon it can not be sustained.

Several instructions are objected to besides those already referred to concerning delivery. In view of the conclusiveness of the finding upon that issue, they are not very important, but no error is discovered in any of them.

The judgment is affirmed.